FILED
U.S. DISTRICT COURT
2009 JAN 12 PM 4:08
CLERK R. Ock
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

UNITED STATES OF AMERICA

v.  :  CASE NO.: CR208-33

KEON FULLER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Keon Fuller is charged with possession with intent to distribute cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); discharging of a firearm during the commission of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(iii); and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Defendant has filed a Motion to Suppress Evidence (Doc. No. 21), and the Government has filed a Response (Doc. No. 29). The undersigned conducted a hearing on January 8, 2009, at which Matthew Wilson ("Wilson"), a narcotics investigator with the Brunswick, Georgia Police Department, testified.

## FINDINGS OF FACT

The credible testimony at the evidentiary hearing established the following:

Wilson participated in a "street sweep" conducted by the Brunswick Police Department on May 30, 2008. Wilson was wearing civilian clothing and a ballistic raid vest that clearly identified him as a police officer. Defendant was riding a bicycle

directly toward Wilson when he noticed Wilson and abruptly make a u-turn. Wilson began paralleling Defendant after this maneuver raised his suspicions. Wilson observed Defendant repeatedly check behind him and then return to his previous course. This behavior prompted Wilson to approach Defendant and ask to speak with him.

After agreeing to speak with Wilson, Defendant indicated that he was visiting someone in a nearby public housing complex. However, Defendant was unable to give Wilson the name of the person or the apartment number he visited. Defendant's demeanor was nervous, and Wilson noted that his left hand shook nervously. Wilson asked Defendant several times to keep his hand away from his pocket. Defendant informed Wilson that he was not on probation, out on parole, or barred from visiting the housing complex. Wilson ran a background check on Defendant and as he waited for a response, Defendant stared at Wilson's radio and repeatedly asked if they were talking about him. Wilson's suspicions increased after the police dispatch informed Wilson that the identification number given by Defendant came back as belonging to another person. Wilson felt at that time that Defendant was being evasive and had given him false information.

Wilson became concerned for his personal safety when Defendant asked him if he was wearing a bulletproof vest. Wilson felt it necessary at that point to frisk Defendant for weapons. Wilson took hold of the back of Defendant's shirt. Defendant started to get off his bicycle before abruptly attempting to run. Wilson tried to bring Defendant to the ground with a leg sweep. Wilson noticed Defendant raising a handgun with his right hand as he was executing the leg sweep. Wilson struck Defendant's right

arm in a downward motion and heard the gun discharge as the two fell to the ground. Wilson testified that he saw the handgun on the ground near Defendant's right hand and what appeared to be crack cocaine in Defendant's left hand. Defendant then informed Wilson that he had been shot.

## DISCUSSION AND CITATION TO AUTHORITY

Defendant asserts that all evidence that was obtained in violation of his Fourth, Fifth, and Sixth Amendment rights should be suppressed. (Doc. No. 21). The Government contends that no evidence it intends to offer at trial was obtained in violation of any of Defendant's rights. The Government further contends that no suppression of evidence is warranted here. (Doc. No. 29, pp. 3-4).

A police officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. Terry v. Ohio, 392 U.S. 1, 30 (1968). The validity of the stop is considered in view of the totality of the circumstances. When taken as a whole, a suspect's actions can provide police with reasonable suspicion, even if none of the actions are criminal on their face. United States v. Arvizu, 534 U.S. 266, 275-76 (2002). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). In Wardlow, the Supreme Court held that an articulable suspicion may arise if a defendant flees upon seeing police officers arrive in an area known for heavy drug trafficking. 528 U.S. at 124-25. An individual's presence in an area of expected criminal activity is not enough, standing

alone, to support a reasonable suspicion, but the fact that the stop occurred in a "high crime area" is a relevant contextual consideration in the Terry analysis. Wardlow, 528 U.S. at 124. Wardlow noted that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Id.

Wilson's uncontradicted testimony reveals that he had a "reasonable and articulable suspicion" that Defendant was engaged in criminal activity. See Terry, 392 U.S. 1. Wilson approached Defendant after observing his suspicious u-turn and the suspicious manner in which he repeatedly checked behind him. Wilson's suspicions were further aroused when Defendant indicated that he was coming from a nearby housing project, but could not identify the person or the apartment number he had just visited. Wilson noted that Defendant's left hand shook nervously and he repeatedly moved it from the bicycle's handlebar to his pocket. Wilson felt Defendant was not being truthful when the identification number given by Defendant came back as belonging to someone else. Wilson observed that Defendant appeared to be extremely nervous throughout the background check process. Defendant acted suspiciously by staring at Wilson's radio and repeatedly asking if the people on the radio were talking about him. Thus, Wilson was justified in stopping Defendant and briefly detaining him for investigative purposes.

A police officer may frisk an individual after a legitimate stop so long as "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27. A police officer may frisk an individual when the officer has an objectively reasonable belief, based upon specific

facts, that the officer is in danger. United States v. Bonds, 829 F. 2d 1072, 1074 (11th Cir. 1987).

Defendant was briefly, and legitimately, detained by Wilson. Wilson initially became concerned for his personal safety when he had to repeatedly ask Defendant to keep his hand away from his pocket. Wilson's fear for his personal safety was heightened when Defendant asked him if the vest he was wearing was bulletproof. Wilson testified that this was the first time he had been asked that question by a civilian in this type of encounter. Wilson further testified that he had been previously informed by other officers that a question of this nature is a warning sign for potential danger. Given the circumstances, a reasonable person could conclude that his personal safety was in danger. It is clear that Wilson's decision to frisk Defendant for his personal safety was appropriate and constitutional.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Motion to Suppress (Doc. No. 21) be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this 12th day of January, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE